(C.D. 4000)

PAGE & JONES, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 22, 1970)

*Ward, Mestayer & Knight* (*C. Scott Edmundson, Jr.*, and *Roland J. Mestayer, Jr.*, of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before Watson, Maletz, and Re, Judges

Watson, Judge: The merchandise under consideration in these eighteen protests, which were consolidated for trial, consists of certain articles which were classified under item 731.15 of the Tariff Schedules of the United States and assessed with duty at the rate of 33 per centum ad valorem under the provision therein for "Fishing rods, and parts thereof".

Plaintiff claims the merchandise properly classifiable under item 731.60 of the schedules at the rate of 25 per centum ad valorem which provides for "Equipment designed for sport fishing, fishing tackle, and parts of such equipment and tackle, all the foregoing, not specially provided for".

The question before the court is whether or not the imported articles are fishing rods, as classified by the Government or fishing poles as claimed by plaintiff, and thus classifiable as "Equipment designed for sport fishing, * * *."

Plaintiff's illustrative exhibits 1, 2, and 3 are representative of the imported merchandise and are described on the various invoices as "Bamboo Jointed Poles". An examination of the illustrative exhibits shows that they come in either two or three separate parts which can be screwed or slipped together. The merchandise has ferrules (plastic sleeves) for joining the parts of the "pole" into one single pole and eyelets for the fishing line to go through. The "poles" have been lacquered, shellacked and straightened.

Exhibit 4 is a copy of a catalogue sheet of the B & M Company (in whose account the plaintiff imported the merchandise). It illustrates exhibit 1 which is designated "JA" pole and describes the merchandise as having certain features. This catalogue sheet also illustrates exhibit 2 which is designated as an "A" pole and uses language descriptive of that item.

Illustrative exhibit 5 is a fiberglass rod and reel offered and received in evidence as being illustrative of a fishing rod.

Exhibit A is a reel which has an adjustable clamp that can be screwed on over the imported "poles" and can be used for fishing. The line in exhibit A can be and is threaded through line guides on the "pole" (exhibit 1).

Exhibit B is a fly rod, that has "fly rod action" (limberness).

Four witnesses testified on behalf of the plaintiff with respect to plaintiff's contention that the imported merchandise should be classified as "Equipment designed for sport fishing * * *", that is, fishing "poles" rather than as fishing "rods" and parts.

Each of the witnesses qualified as an expert in the field of the sporting goods trade as it relates to fishing equipment. Each level of the sporting goods trade was represented by the witnesses: an importer, a wholesaler and a retailer. In addition, one of the witnesses, a conservation officer for the State of Alabama, offered testimony as an individual whose occupation imposed on him the duty to distinguish between "fishing rods" and "fishing poles". Each of these experts testified in unqualified language that exhibits 1, 2, and 3 are not fishing rods but rather are fishing poles and that there is a clear distinction between such terms in the sporting goods and game conservation fields.

They all testified to the fact that "fishing poles" (exhibits 1, 2, and 3) are generally used for still or drop fishing, utilizing natural bait. They distinguish this type of fishing equipment from fishing rods (exhibit 5) which they contend are designed for strength, casting, using artificial bait, and having as one of its essential features, provision for a reel seat in order that a reel may be attached, as it is on exhibit 5.

Defendant introduced exhibit A in an attempt to show that it was a reel which could be attached to a pole and on being so attached would uphold the classification of the imported articles as fishing rods. However, the testimony of all four witnesses established that exhibit A was not a reel in the commonly accepted meaning of the term. They considered the exhibit as being a "line keeper" as distinguished from a "fishing reel".

The combined testimony of the witnesses established that the difference between a fishing reel and a line keeper is that a line keeper has no gears, may not be used to cast, and may not be used to hold fly line or used with a fly rod. A reel, on the other hand, is a device equipped with gears, and may be used to reel in a line, to cast, and in the case of fly rod reel, will hold fly line.

The witnesses held that the mere attachment of exhibit A to exhibits 1, 2, and 3, will not change a pole and line keeper into a rod and reel.

Defendant also contends that the line guides or eyelets on the imported articles tend to make exhibits 1, 2, and 3 rods rather than poles. An examination of the exhibits, however, clearly reveals that there

is a difference between the eyelets found on the poles and those found on the fishing rods (exhibit 5 and exhibit B). The eyelets on the poles are small and are not suitable for casting, inasmuch as a line passing through would not be able to slide back and forth with ease, while the line guides on the two fishing rods are larger and can be used for casting. Therefore, in light of this observation and of one of the witnesses' testimony, it is clear that the line guides (eyelets) on the imported "poles" would not serve the same purpose as line guides on a fishing rod.

Plaintiff calls the court's attention to the definition given in the Random House Dictionary of the English Language, Unabridged, copyright 1966, as follows:

> Fishing Pole—A long slender rod of wood or other material with a line and hook fastened to one end for use in catching fish.
>
> Fishing Rod—A long slender cylindrical flexible rod usually made of bamboo, steel or fiber glass for use with a reel and line in catching fish.

Reference is also made to the discussion of "Methods of Fishing For Sport" in Encyclopedia Americana, 1967 edition, Volume 11, at page 300.

Reference is also made to Encyclopaedia Britannica, 1966 edition, Volume 9, at page 374.

The final paragraph of the section covered on the above pages states:

> "In the United States a light-weight telescopic rod made of glass is preferred. Bait casting, spinning and spin casting rods also are used for still fishing on occasion, and the traditional long bamboo 'cane pole' prevails in many locations. It is used without a reel, a length of line being tied to the tip of the pole, which is often in one piece."

In *National Carloading Corporation* v. *United States*, 36 Cust. Ct. 309, Abstract 59620 (1955), the merchandise described on the invoice as "Bamboo Poles" was classified under paragraph 1535 of the Tariff Act of 1930 for "* * * fishing rods and reels, and parts thereof, * * *." Plaintiff's chief claim was for classification under said paragraph for "* * * all other fishing tackle and parts thereof * * *." The court therein described the involved articles as follows:

> * * * Each consists of two pieces of bamboo of approximately equal length, one thicker than the other. Each piece tapers, * * *. The narrower end of the thicker piece is hollowed out for a couple of inches and receives the wider end of the thinner piece to make one long stick. The narrower end of the thinner piece has a small, round, brass eye held in place by thread and paint or glue.

It appears that the articles now before the court are identical to the above described articles except that they have, in some cases, three

pieces and also have an "eye" on each piece. The court in the *National Carloading* case, *supra*, sustained the protest and in its decision (page 310) stated:

> However, both the evidence offered in the case at bar and common knowledge indicate that fishing poles are a rather simple, rudimentary type of fishing equipment, while fishing rods are more elaborately made products, having features of greater convenience in their use, such as jointed construction, and provision for handles and reel seats. The exact line of demarcation between fishing poles and rods might in some cases be difficult to determine, but we are of the opinion that the bamboo articles at bar do not approach the borderline between the two and are well within the category of "poles" and outside the designation of "rods." The only feature of the article at bar which bears some similarity to the features of fishing rods is the rather crude joint provision, but this, we think, does not alter its basic character sufficiently to bring it within the scope of the term "fishing rods."

While it appears that fishing poles are "a rather simple, rudimentary type of fishing equipment", we are of opinion that despite their "jointed" construction and the presence of eyelets on exhibits 1, 2, and 3, the imported articles, lacking reel seats and which, as disclosed by the record are not capable of being used for casting, are within the category of "poles" and outside the designation of "rods".

Plaintiff directs our attention to the holding of the court in *Norton Manufacturing Corporation* v. *United States*, 288 F. Supp. 829 (1968). There, the merchandise consisted of lengths of bamboo cane which had been cut into sections, cleaned, straightened and varnished. After cutting, they were fitted with either brass, aluminum or steel ferrules of a screw-lock type. A small wire loop was fitted at the far end of the last piece of the bamboo, which was used to tie or secure a fishing line. The fisherman merely locks the lengths together before using. The bamboo was cut into lengths solely for ease of transportation but performed exactly the same fishing functions as would an uncut length of bamboo. Plaintiff therein contended that the merchandise in question constituted a fishing "pole" rather than a fishing "rod" and that it was not subject to the tax on fishing rods imposed by section 3406 (a)(1) and section 4161 of the Internal Revenue Code. In the *Norton* case, *supra*, the court held that the involved articles constituted fishing "poles" within the meaning of the Internal Revenue Code. Pursuant to certain Revenue rulings, it appeared that the manufacturer's excise tax did not apply to uncut poles, since they are not materially changed in design from their natural state, whereas, poles cut into sections and fitted with ferrules or other means whereby they may be joined together, were considered to be manufactured and designed for fishing purposes and were "fishing rods" subject to excise tax on sale. The

court in the *Norton* case, *supra*, held the distinction made in the Internal Revenue rulings, as noted above, to be unpersuasive and in its decision stated:

> \* \* \* True it requires more manufacturing effort to cut the poles and install interlocking ferrules. But it improves the utility of the pole for fishing not one whit, \* \* \*. Both forms of poles may be used only for still fishing, and "do not require any special skill or technique since the bait is merely lowered into the water at the pole's length, and due to the shortness of the fishing line only a very limited area of water in relation to where the fisherman is located is available for fishing and the user must wait for the fish to come and find the bait. Poles are not used for, nor are they adaptable for *casting*." [Italics ours.]

The court in the *Norton* case, *supra*, at page 834, further stated:

> \* \* \* Poles have no hand grips nor line guides nor reels, but for convenience in transporting, are often jointed. The function of both unjointed and jointed poles is the same, and differs, of course, from that of a rod which is used for casting, \* \* \*.

On the basis of the record there presented, the court in the *Norton* case, *supra*, held that the poles manufactured by plaintiff were not "fishing rods" within the meaning of the Internal Revenue Code.

In the case of *Commerce-Pacific, Inc.* v. *United States*, 278 F. (2d) 651 (1960), the United States Court of Appeals, Ninth Circuit, upheld the district court's finding that "jointed" bamboo cane poles which had been straightened, scraped, varnished or lacquered, painted, cut in two, three or four sections and fitted with ferrules or other means by which the sections might be joined together, and which were prepared and used for fishing purposes, constituted "fishing rods". The court in the *Norton* case, *supra*, pointed out that in finding for the Government, the circuit court in the *Commerce-Pacific* case, *supra*, placed emphasis upon the absence of the term "joints" from the definition of "fishing pole", and stressed the similarity between the definition of fishing rods, which included "joints", and the construction of the jointed bamboo poles in issue in the *Commerce* case. In commenting upon the holding of the court in the *Commerce* case, the court in the *Norton* case stated:

> \* \* \* Thus, it appears, that the emphasis placed by the court in *Commerce-Pacific* upon "joints" in construing the poles as "fishing rods", was unwarranted, for rods are, not always, but only "often" joined, and in addition are equipped with hand grips, line guides and used with a reel. Poles have no hand grips nor line guides nor reels, but for convenience in transporting, are often jointed. *The function of both unjointed and jointed poles is the same, and differs, of course, from that of a rod which is used for casting*, and to propel a lure a great distance from the caster while

the line is being played out through guides from the reel attached to the rod. [Italics ours.]

In Webster's Third New International Dictionary, Unabridged, 1963, page 858, we find:

> fishing pole *n:* a slender tapering pole with a line attached to the tip used in fishing * * *
>
> fishing rod *n:* a springy, tapering often jointed rod (as of wood, split bamboo, or steel) equipped with hand grip and line guides and used with fishing line and reel for catching fish

A sample is a potent witness. *Marshall Field & Co.* v. *United States*, 20 CCPA 225, T.D. 46037 (1932). *United States* v. *Frankel Importing Co.*, 18 CCPA 188, T.D. 44378 (1930). A visual examination of the imported articles, as presented by exhibits 1, 2, and 3, persuades us that they are not "fishing rods".

Further, the testimony adduced in this case on the part of the plaintiff is, in our opinion, sufficiently probative to support the claim that the articles in question are not fishing rods. In summary, plaintiff's witnesses testified that the imported articles are not "fishing rods" but are "fishing poles"; that the mere fact that exhibits 1, 2, and 3 have plastic ferrules on them or "line guides" would not change their "classification" from poles to rods; that the "line guides" on exhibits 1, 2, and 3 would not serve the same purpose as the line guides on a fishing rod; that the imported articles lack certain essential characteristics possessed by a fishing rod; and, specifically, that the imported articles could not be used for "casting".

For all of the reasons heretofore stated, we hold the involved merchandise properly dutiable under item 731.60 of the Tariff Schedules of the United States at the rate of 25 per centum ad valorem under the provision therein for "Equipment designed for sport fishing, fishing tackle, * * *, all the foregoing, not specially provided for", as claimed.

The protests are sustained. Judgment will issue accordingly.